May it please the court, Assistant United States Attorney Larry Buttrick, my name is Harlan Kimura and I represent the defendant appellant Mr. Uiki Teaupa. There are three issues in this case. The first issue is whether or not Miranda warnings should have been given by Officer Byton to his longtime friend Mr. Teaupa before the statements were made to him, starting in October 2009 and then February 2011, July 2012. The second issue is whether Mr. Teaupa's alleged waiver of his Miranda rights were knowing, voluntary, intelligent. Or alternatively, as set forth in our reply brief, there could be the issue regarding whether the fruit of the poisonous tree applies. Because our position is that the prior statements made by Mr. Teaupa to Officer... Could I ask you to move up a little bit perhaps? Thank you. I'm sorry. Regarding the Mr. Teaupa, I was talking about the second issue. Mr. Teaupa, because his statements we would argue are involuntary because the Miranda rights were not read to him, they would be involuntary... Let's go back to the first, what you're saying is the first issue. My involuntariness argument. In other words, you understand, you're not arguing that he was in custody at the point that he was talking to the officer the first two times, but rather that because of the unusual circumstances, that there should have been something to mitigate what was otherwise involuntary. Is that your argument? Yes, that is our argument. We have no dispute regarding whether he was or was not in custody and whether there was interrogation. That was the issue that the to deny Mr. Teaupa's two motions to suppress. We made the argument that there should have been Miranda rights and warnings given to Mr. Teaupa prior to those statements. But do you contest that he was not in custody? I mean, your argument that he gave these statements because Officer Butain was his friend and so he was going with him and talking to him about these associate's deals, was, he was lulled into some kind of involuntary statement. But you don't, what are you arguing with respect to custody there? We're not really arguing that Mr. Teaupa was or was not in custody to trigger the Miranda rights. We're arguing that... But this would be a totally new extension of the Miranda notion, is that right? Is there any case law supporting this? Yes, Your Honor, there is some case law, not exactly on all fours in terms of the facts in this case and other cases, but there are cases in different circuits which set forth the proposition that statements could be circuit court case that I cited in my briefs, the statement by a person or law enforcement officer who knew the defendant for a number of years since high school did state to the suspect, we've known each other for a long time, why don't you tell me what happened off the circumstances in our case. Officer Bighton and Mr. Teaupa knew each other for over 20 years, their wives were the best of friends, their children would sleep over at each other's home, and the children of Mr. Teaupa would call Officer Bighton, Uncle Eddie. So what happened here? It seems to me there was some sense that he wouldn't even have been prosecuted if the Hawaiian police officers had continued to be involved in investigating, but somehow someone higher up or the federal government got involved, and so that's why he was prosecuted? If I'm not mistaken, he was recognized as a task force officer with the Federal Bureau of Investigation, and I understand that they usually have two, one, an FBI agent, and two, a task force officer, because as far as personnel, they don't have as many agents on the island of Hawaii, and so sometimes you would use police officers to work with the relationship. Now, if you also look at the testimony of Officer Bighton, he knew where Mr. Teaupa could be found at his brother's house, as well as whenever he said that incriminating statements could be elicited in a non-custodial setting, they would, right off the bat, just talk about their children, rugby, rock wall building, other things of common interest. So you can see that Officer Bighton is playing on the long-standing relationship that they had to ease the fears of Mr. Teaupa, to get him to the neighborhood I've known way before he became a police officer. So I'm talking to a friend who became a police officer, as compared to a police officer who, if I say anything, it can be used against me. And that is one of the tenets of the long-standing Miranda case, where in dicta, it does set forth the proposition that the whole reason of having Miranda warnings is to let the suspect know that this is going to be an incriminating statement. Your Honor, may I reserve the last two and a half minutes for arguments as to what the government says? Thank you, Your Honor. Good morning, Your Honors. Larry Buttrick, representing the United States. I apologize for the voice, what little of it is left. Your Honors, I understand the Court's confusion. I had a little bit when I was trying to go through these briefs and come up with the articulate argument. Confusion between Fifth Amendment, Fourteenth Amendment. Is Miranda the one and for all thing you have to do, or is it one of many things the Court looks at in totality of circumstances? I believe it's more so the second part when we're looking at the voluntariness of statements. This case, however, the Court needs to be clearly aware that there's only four contacts in this case over the course of three years. Two were initiated by Mr. Taupa, who wanted to share information with Officer Butin. The fourth one was when he was arrested and given Miranda. Now, the Court specifically found in this case there was no quid pro quo as proposed by Mr. Taupa. What about that whole episode of the cell phone? Why were they giving him a cell phone? I understand it wasn't used, but they were giving him a cell phone. So they seem to have had some kind of agency relationship, or thought they did. Well, Your Honor, all I can honestly say is speculate at this point. It would be a situation where you have an individual coming to you and constantly just gives you historical information. Mr. Taupa is not going to the police and saying, I'm bringing in drugs next week for my runner. This is what you can do to catch him. What he's saying is that weeks ago, months ago, we did all these things, which leaves the police hanging. There's nothing they can do in this case. The phone, I believe... I'm sorry, Your Honor. I'm sorry. I didn't mean to interrupt you, but sometimes if you let something go, you can't take each logical step in order. But given the fact that he's telling him these things, and they happened in the past, isn't that a confession? I mean, isn't it something he could have easily been arrested for at that time? Your Honor, there would be no corpus delecti. We can't arrest and charge and convict someone based upon their statement that I did something. We have to have some evidence to prove that that crime in fact actually took place. What he's doing at this point is just saying drugs were smuggled into Hawaii. I think the phone... Your Honor, to get back, because it is a good point, I think this was an opportunity for Officer Butin to try to confirm, is what he's telling me the truth. Because at this point, we don't know. All we have is these things happened at one point. Gives him the phone, and he throws it away. So there is no credibility based upon that. In fact, Mr. Taupo's statements lose credibility by him not cooperating with the police at that point. I hope that helps. I mean, I understand there is no precedent to which this could fit in terms of the coercive or other impermissible nature of the statements. But it does seem pretty plain that he thought he was talking to someone who was... Either he thought he was acting as a protected... Informer, or he thought this was his friend and it wasn't going anywhere. At least the first time. After that, the FBI guy was there, and no one told him otherwise. Why was he doing this? Your Honor, because we're here now. You tell someone something, you come back later and say, oh, I had told them. You tell someone, you give someone information, a law enforcement officer, they can't act on. But then later, when you do get in trouble, you do get caught. I told them everything, so we're here now. But they did arrest him for the first time. I'm sorry? They ultimately arrested him with regard to what he had told them the first time, didn't they? Yes, after they arrested the kingpin, and the kingpin came back at trial and cooperated. So then they had the evidence to corroborate what he had been saying. So they did do it eventually. But the focus here, Your Honor, this is the key point. It's what did the police do in this case? Did the police use any coercive technique based upon that friendship to overbear the will of Te'ahu? That is the standard. Nothing has been put before this court to say that that happened. Nothing. The cases that are cited, lifelong friend, what's going to happen to your family? They bring the policeman in on four occasions. What's going to happen to your family? You're going to lose your job, you need to confess, you need to cooperate. It's coercive tactics that were used by the police to overbear the will of the defendant using their friendship. That didn't happen in this case. Nowhere in the record. Nothing like that happened in this case. Counsel, I'm curious at the sentencing phase, the fact that this guy, the defendant here, kind of talked his way into a conviction. Was that brought out by the defense at sentencing to try to suggest a lower sentence for this individual? No, I don't believe it was. I don't believe it was brought out. I believe that there was an effort to move for a 5K, which would be a downward departure for cooperation, which was not successful. The government moved for a 5K? The government would have to move, and the government did not move. The court did not pursue that argument. But under 3553, I take it, the reason I ask is if I were defending this client here, I would imagine I would say, well look, you know, he did some bad things, but he was open about the fact that he did it, and he talked about it. It seems like every time he would talk to his old friend, he would talk about it. And it seems to me that in this case, that's where that might become relevant is the sentencing factor, not as a guilt or innocence factor or voluntary confession or not. Maybe the sentencing, but it sounds like that wasn't pitched. I don't believe it was, Your Honor. No, I don't believe it was with the public authority defense. Surprising, I agree, Your Honor, but I don't believe it was. Mr. Kimura could address that better than I. I'm sorry, I was not the trial attorney here. With regard to the obstruction of justice sentence, the basis was that he said that he was specifically promised payment expressly, is that what he said? His testimony throughout is that he was told he would be helped with his DUI, which he was in jail on. Told or understood? I'm sorry? Told or understood? Mr. Teapa's testimony is that he was told he would be helped with his immigration situation and his, I believe, his DUI. He was not told how he would be helped, but it was his impression that he was told that he would be helped. Obviously, Officer Buten denies that totally, and it's clear. And again, when you look at any argument toward a quid pro quo or any argument toward there is an agreement here for cooperation, it falls woefully short in that he acknowledges he was in jail on a DUI and he went to court on that shortly thereafter. Nothing was done by Officer Buten. There was no assistance. There was nothing. Nothing was done by Officer Buten in regards to Mr. Teapa's immigration situation. Three years, there was never any type of payments made to Mr. Teapa. So I think that is a clear point, too, to undercut any argument that I had a quid pro quo agreement with law enforcement in this case. What I was trying to find out was to have an obstruction of justice, if he said it was my understanding, that would be a hard basis to have an obstruction of justice claim on, right? Your Honor, it's... So I ask you, did he say it was my understanding, or did he say people told me in haec verba that they would pay me or they would help me out? The court did a perjury analysis, and it's my understanding from the transcript, and Mr. Kimura will certainly correct me if I'm wrong, but Mr. Teapa's testimony was that he was told he would be helped with his immigration, he would be helped with his DUI, and he would be paid. And this was all coming from Officer Buten. Well, actually, a lot of it seemed to be based on the suppression hearing. Yes, Your Honor. Those are the statements that were challenged. I believe the second prong on the obstruction was the public authority defense, where the court ruled that they found no credibility to the argument that there was a quid pro quo or there was any offer by the police to provide any remuneration or consideration. So what the district court specifically found was that he perjured himself regarding the fact whether there was an agreement. So Judge Brezan's question is, was, did he understand, did he testify he understood there was an agreement, or did he testify that Officer Buten overtly said, I will help you with immigration, I will help you with, I will pay you? It is my understanding from the record, Your Honor, that Mr. Teapa testified that he was told he would be helped with his immigration, he would be helped with his DUI. I mean, reading what the district judge said, he said, he said the deal with Buten was that he believed he was helping him out so he could get help in his immigration case. He also testified at trial that he thought he was going to be paid for giving such information. Again, this testimony was false. And I have trouble with that, because, I mean, it seems perfectly plausible that he thought those things, because else why was he saying these things? He might have thought them with no basis at all, but if all he said was I thought them, and that's all so far I'm finding the district court saying, then how can that be the basis for an obstruction of justice finding? Your Honor, I, again, the court is reviewing the evidence as it heard it, the court has already ruled... And I'm reading what he said, he said, he didn't say that he said they were going to help him, he said he thought they were going to help him. Your Honor, I believe that's in the context of what the court is saying. The court has ruled that it does not believe a word Mr. Teapa has said. The court does not believe there was ever a statement made by the officer that he would get help with his immigration, he would get help with his DUI, or he would get paid. So the court's reference, I believe at that point, would be appropriate to say he made the statement, he believed this is what was going to happen. The court found that was not true. The statement did not come from law enforcement. It would be difficult for the court to turn around and say he was told, because the court's already ruled that didn't happen. Thank you. All right, thank you counsel, you're over your time. Thank you. We reserve some time. Your Honor, in regards to Mr. Teapa, he did understand that he was helping Officer Bighton. And what he did, and the result of what he did, does show that. For instance, in 2006, he did mention to Officer Bighton about his cousin Mafua. A little bit later, Mafua was arrested. Then he talked about in 2012, when he, I'm sorry, 2011, no I'm sorry, let me try again. In October 20, 2009, he told Officer Bighton that he came down from the mainland with a person by the name of Simon, and as a result, they were going to collect drug proceeds and go back to the mainland. Sure enough, Officer Bighton calls his counterpart in Honolulu. Simon was subsequently detained. They recovered $37,000 for the government's coffer. There was the cell phone. It was given by Officer Bighton to Mr. Teapa. Sure, it, according to Officer Bighton, he may not, Mr. Teapa may not have qualified as a documented confidential informant. But the point is, and the issue is, whether Mr. Teapa understood, believed that he was helping Mr. or Officer Bighton. And all those things that he did, did turn out to help Officer Bighton. And also, during the trial, we did show that Officer Bighton is a decorated police officer. How did he behave? We submit. Because of the tactics that he uses, where he would garner the trust of individuals, such as his longtime friend, without giving Miranda warnings, and then turn around and use it against him. Your Honor, also, there are the other two issues that we just spoke about, mainly the third one, which is the obstruction of justice. Also, the second one, and it relates to everything else. When you look at the totality of circumstances, you look at Mr. Teapa. He was 42 years old. He was born and raised in Tonga, did not speak any English, necessarily, to an appreciable extent. He dropped out after one month in the 10th grade, didn't really speak any English until he came to Hawaii in 1993, or actually didn't really speak any English until he got married to his wife. But his close circle of friends, aside from Officer Bighton, were all the other Tongans and family relatives that he worked with. You also look at his cultural upbringing. He said that Officer Bighton was just like a relative, and his children considered Officer Bighton a relative. When you take all of those things into account, Your Honor, our position is that Miranda warnings should have been given to Mr. Teapa by Officer Bighton to let Mr. Teapa know... I don't understand why you're arguing about Miranda warnings at that point. Why aren't you just saying that it was involuntary? What do the Miranda warnings add to your argument? Because Miranda warnings would give the opportunity for Mr. Teapa to make an informed decision as to whether or not he should provide... Okay, but there weren't Miranda warnings, so the question is whether it was involuntary or without the Miranda warnings, right? The Miranda warnings are just a red herring in this case. They have nothing to do with our decision. Our decision is whether, given what did happen, was it voluntary or involuntary, right? Yes, Your Honor, and... In that respect, yes, Your Honor, and so we would argue that Mr. Teapa's statements were involuntary. That's your ultimate argument, not Miranda warnings. Okay. Yes, Your Honor, I believe my time is up. Okay. So, for clarifying that, United States versus Teapa would be...
judges: Wardlaw, Berzon, Owens